# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT GARY MOORE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. JKB-18-1649 |
| CODY GILPIN, *Officer*, OFFICER JOHN DOE, WILLIAM LEE THOMAS, *Sgt.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Self-represented Plaintiff Robert Gary Moore, presently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, brings this civil action pursuant to 42 U.S.C. § 1983 against Defendants, Correctional Officer Cody Gilpin,[1] Sergeant William Thomas, and Officer John Doe.[2] *See* ECF No. 1. Through the Complaint filed on June 8, 2018, Moore alleges that Officer Gilpin assaulted him and thereafter refused to take him for medical treatment, thus violating his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 3-6. Moore also alleges that Sgt. Thomas violated his Fifth and Fourteenth Amendment rights to due process by failing to process the Administrative Remedy Procedure ("ARP") grievance that Moore filed regarding the assault. *Id.* Moore seeks $10,000 in monetary damages from each Defendant and injunctive relief in the form of Defendants' termination from their employment. *Id.* at 8.

---

[1] The Clerk shall be directed to correct the spelling of Defendant Cody Gilpin's name on the docket.

[2] Moore initially named "Officer Gillpen," "Officer Thompson (Thomas)," and "Officer John Doe" as Defendants. ECF No. 1. By Order dated July 25, 2018, the Court directed Moore to provide Defendants' full names so that service may be effectuated. ECF No. 9. On August 7, 2019, the Court received correspondence from Moore identifying only Officer Cody Gilpin and Sgt. William Lee Thomas. ECF No. 11. Therefore, Officer John Doe shall be dismissed from the suit.

On October 24, 2018, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 17. Moore filed a response on November 5, 2018. ECF No. 20. After review of the record, exhibits, and applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). Defendants' motion shall be construed as a Motion for Summary Judgment and shall be granted.[3]

## Background

Moore claims that on April 6, 2018, Officer Gilpin escorted him to the medical unit at NBCI for an examination by a nurse practitioner. ECF No. 1 at 3.[4] Moore states that during the examination, the nurse practitioner squeezed his left leg, causing him to "raise[] up in excruciating pain." *Id.* According to Moore, Officer Gilpin then slammed his head on the medical table. *Id.* at 3-4. Thereafter, Moore demanded to be taken back to his cell "because he didn't like and accept the way he was being treated, and . . . the [nurse] should have known what medical problems plaintiff had." *Id.* at 4. Moore alleges that when he began to leave, he heard the nurse say in a sarcastic tone that Moore did not have stomach and leg pains as he had reported. *Id.* Moore also alleges that as he was being escorted back to his cell, Officer Gilpin "became real aggressive" and "continued to push the plaintiff forward," causing Moore to fall to his knees. *Id.* According to Moore, Gilpin and another officer dragged him by his arms, which were handcuffed from behind, and slammed his arms through the cell slot, scraping the skin from his forearms. *Id.* at 4-5. Moore

---

[3] In his Complaint, Moore also sought, pursuant to Federal Rule of Civil Procedure 26(b)(1), "discovery to produce and inspect" video footage from the "tier camera for 1-C-28" between 7:30 to 9:00 a.m. on April 6, 2018. ECF No. 1 at 7. Based on the record already before the Court, the video footage is not important in resolving the issues. *See* Fed. R. Civ. P. 26(b)(1). Thus, to the extent Moore seeks an Order directing Defendants to produce discovery materials, that request shall be denied.

[4] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

2

claims that he told Officer Gilpin he needed to see the nurse, but Gilpin denied his request. *Id.* at 6.

Moore states that on April 30, 2018, he submitted an ARP grievance regarding the incident. *Id.* at 5. Moore claims that he placed the ARP in a sealed envelope and gave it "to Officer Hoover to give to Officer Tichnell." *Id.* Having not received a copy of the ARP by May 8, 2018, Moore asked the tier officer to inform Tichnell and Sgt. Thomas that he had not received a yellow copy indicating that his grievance was being processed. *Id.* Moore again asked Tichnell about the ARP on May 17, 2018. *Id.* at 5-6. Moore claims that Tichnell confirmed receipt of the ARP from Officer Hoover, that Tichnell gave it to Sgt. Thomas, and that Tichnell stated, "to tell the truth, it probably got shredded by Sgt. Thomas." *Id.* at 6. Moore also claims Tichnell told him that Sgt. Thomas was off from work for a few days for fighting another officer and that he would ask about the ARP when Thomas returned. *Id.*

According to Defendants, at the time of the alleged incident on April 6, 2018, Moore was housed at NBCI in Housing Unit 1, Tier C, Cell 28. ECF No. 17-2 at 3 (Business Records). They do not dispute that Officer Gilpin escorted Moore to the medical unit, where he was examined by Registered Nurse Holly Pierce. ECF No. 17-3 at ¶ 3 (Decl. of Cody Gilpin); ECF No. 17-4 at 2-6 (Medical Records). Pierce noted that Moore entered the exam room after complaining of abdominal pain. *Id.* at 4. When asked to describe his pain, Moore replied, "read my records" and "You should know." *Id.* Pierce asked Moore to lay flat for an examination. *Id.* When Pierce attempted to assess him, Moore sat up, jumped to his feet without difficulty and screamed, "I'm done. I'm over this. I'm leaving." *Id.*

Officer Gilpin states that he remained in the examination room during Moore's medical visit for the protection of the medical professionals. ECF No. 17-3 at ¶ 3. Officer Gilpin believed

3

that Moore's movement in jumping up from the table was a threatening action towards Pierce, and he pushed down on Moore's shoulder to keep him on the table. *Id.* at ¶ 4. Officer Gilpin states that he did not purposefully, if at all, push Moore's head into the table. *Id.* The medical examination ended immediately after Moore's outburst, and Officer Gilpin began to escort him back to his cell. *Id.* Officer Gilpin says that he has no recollection of hearing Pierce say that Moore was faking his injuries. *Id.*

Officer Gilpin began to escort Moore while walking at a moderate pace. *Id.* at ¶ 5. According to Pierce, Moore's gait was initially normal but as he moved down the hall away from the medical unit, he threw himself to the floor stating that he could not walk. ECF No. 17-4 at 4. Officer Gilpin also recalls that Moore refused to continue walking. ECF No. 17-3 at ¶ 5. Officer Gilpin asked for assistance from a nearby officer and they carried Moore back to his cell, where he was uncuffed without further incident. *Id.* Officer Gilpin has no recollection of Moore asking to be returned to the medical unit after he was placed in his cell. *Id.* He states that he did not have any intent on April 6, 2018, to hinder, interfere with, delay or deny Moore medical treatment. *Id.* at ¶ 6.

Jordan Tichnell, a correctional case manager at NBCI, states that he sometimes receives correspondence from Moore and frequently provides him photocopies of legal paperwork. ECF No. 17-5 at ¶ 3 (Decl. of Jordan Tichnell). Tichnell does not recall receiving, nor do his case notes indicate that he received, any correspondence containing an ARP from Moore either on or shortly after April 30, 2018. *Id.* Tichnell states that if he had received an ARP from Moore, he would have provided it to the officer in charge of Housing Unit #1. *Id.* Tichnell has no reason to believe that Sgt. Thomas or any other officer is destroying any ARPs that he forwards to them. *Id.* at ¶ 4.

Specifically, Tichnell denies making any statement to Moore suggesting that ARPs are shredded. *Id.*

Sgt. Thomas has no recollection of receiving any ARP grievances from Moore during the relevant time period. ECF No. 17-6 at ¶ 3 (Decl. of William Thomas). Sgt. Thomas states that when he receives an ARP, he signs it, places the yellow copy in the inmate mailbox to be returned to the inmate, and delivers the original white copy to the ARP office. *Id.* Sgt. Thomas denies destroying any ARPs or any other ARP-related papers sent to him by Tichnell. *Id.* He further states that he does not have any intent to interfere with Moore's attempts to seek administrative remedies and he had no such intent during April and May of 2018. *Id.* at ¶ 4.

On April 8, 2018, Moore received a consultation visit with Nurse Pierce, who requested an abdominal and pelvic CT scan for Moore. ECF No. 17-4 at 7-8. The medical records do not indicate that Moore mentioned any injuries related to the April 6, 2018, visit, nor were any new injuries observed by Nurse Pierce. *Id.* On April 15, 16, and 24, 2018, Moore refused to attend scheduled visits with medical professionals. *Id.* at 9-12. On April 26 and 27, 2018, Moore refused to go on a medical trip in order to receive the previously requested CT Scan. *Id.* at 13-16. Moore further refused a physical examination on May 1, 2018. *Id.* at 17.

On May 10, 2018, Moore filed an ARP appeal to the Commissioner of Correction alleging that Officer Gilpin assaulted him on April 6, 2018, and that the Warden failed to process his ARP regarding that incident. ECF No. 17-2 at 7-9 (ARP NBCI-0809-18). That ARP was sent back to the Warden at NBCI on May 14, 2018, for processing. *Id.* at 4, 11. On May 30, 2018, the ARP was reviewed and dismissed for procedural reasons per COMAR 12.02.28.11.B(1)(h) because an Intelligence and Investigative Division review had been opened. *Id.* at 7.

On August 12, 2018, Nurse Pierce noted that Moore continued to refuse follow up care for his alleged abdominal pain. *Id.* at 18. As of that date, Moore reported that his abdominal pain remained unchanged, but appeared to be in no distress. *Id.*

**Applicable Legal Standards**

Defendants have moved to dismiss the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment. Motions styled in this manner implicate the Court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 88 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" for the nonmoving party means that the nonmoving party must be aware that the court may treat the motion as one for summary judgment and the nonmoving party must "be afforded a reasonable opportunity for discovery" if necessary to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). To do so, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it

cannot present facts essential to justify its opposition" without formal discovery, or otherwise put the district court on notice of the reasons why summary judgment is premature. Fed. R. Civ. P. 56(d). *See also Harrods, Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002).

The Court treats Defendants' motion as one for summary judgment. Moore knew from the motion itself that Defendants are pursuing summary judgment. Moreover, Moore has not sought additional discovery under Rule 56(d), nor has he explained why he cannot present facts essential to justify his opposition without formal discovery. Although Moore repeats his request for "camera discovery" in his opposition to Defendants' motion, *see* ECF No. 20, the record evidence submitted appears to include the relevant documents sufficient for disposition at this time. Construing the motion as seeking summary judgment is therefore appropriate.

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party bears the burden of showing the existence of a genuinely disputed material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A

fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Moreover, a dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-50.

The Court reads Moore's pleadings generously, as he proceeds *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

## Analysis

In their motion, Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6), or summary judgment under Rule 56. In support, Defendants argue that (1) the force used by Officer Gilpin did not rise to an Eighth Amendment violation; (2) Moore has failed to state a claim for deliberate indifference to a serious medical need; (3) Moore has failed to state a claim against Sgt. Thomas regarding his administrative remedies; and (4) Defendants are entitled to qualified immunity. ECF No. 17-1.

In his response, Moore argues that Officer Gilpin intentionally assaulted him even though he never resisted Gilpin's orders. ECF No. 20. Moore states that Gilpin pushed him while they were walking back to his cell, causing him to fall, and bent and scraped his arms on the cell slot. *Id.* In addition, Moore notes that Defendants did not include a declaration from Officer Hoover, who allegedly submitted his ARP to Tichnell. *Id.*

### I. Eighth Amendment

The Supreme Court held in *Kingsley v. Hendrickson* that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." \_\_ U.S. \_\_, 135 S. Ct. 2466,

8

2473 (2015). It is enough that a pretrial detainee shows that the "force purposely or knowingly used against him was objectively unreasonable," *id.*, regardless of an officer's state of mind, *id.* at 2472 (cited in *Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016)). Pursuant to *Kingsley*, this Court must consider whether under the "facts and circumstances" of this particular case, and from the "perspective of a reasonable officer on the scene," the force used against Plaintiff was objectively excessive. *Kingsley*, 135 S. Ct. at 2473.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Here, Moore claims that Officer Gilpin used excessive force when he "slammed" Moore's head on the medical examination table and "dragged" Moore back to his cell. ECF No. 1. With regard to the incident in the medical unit, Moore had already expressed frustration with Nurse Pierce when he jumped up and screamed. The application of force by Officer Gilpin was a measured response, not for the purpose of inflicting pain, but instead for the purpose of protecting Nurse Pierce from a potential threat.

9

Later, Officer Gilpin used the help of another officer in order to return Moore to his cell without further incident and without further injury. As Nurse Pierce noted in Moore's medical records, while Moore was being escorted back to his cell, his gait was initially normal but he abruptly threw himself to the floor. Although Moore states that he fell because Officer Gilpin pushed him, he does not dispute Gilpin's recollection that Moore refused to continue walking thereafter. Officer Gilpin thus instituted a good faith effort to restore order and discipline by using appropriate force to return him to his cell.

Applying the *Kingsley* factors, Moore's allegations do not satisfy the objective prong of an excessive force claim. Moore's actions could lead a reasonable officer to believe that Nurse Pierce was in danger, calling for an application of force. Officer Gilpin used the amount of force necessary to guard against the perceived threat to staff and to return Moore to his cell. Moore's medical records from April 8, 2018, two days after the incident, do not indicate that he sustained any new injuries, and Moore refused to be seen by medical professionals in the weeks that followed. Based on this record, Moore was not subjected to excessive force and Officer Gilpin is entitled to summary judgment on this claim.

## II. Deliberate Indifference

Next, Moore claims that Officer Gilpin violated his constitutional right by refusing to take him back to the medical unit after Gilpin and another officer dragged him into his cell. In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*,

535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Moreover, in a case involving a claim of deliberate indifference to a medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178 (citations omitted). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844. Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation and internal quotation marks omitted).

Here, the objective evidence establishes that Moore suffered no significant injury as a result of Officer Gilpin's actions or inaction. Moore's medical records indicate that when he returned to

the medical unit two days later, he had no new injuries requiring medical attention. In the three weeks that followed, he also refused to attend medical appointments, complete the recommended CT scan, or report for a physical examination. Moore has failed to present evidence that would support a finding of an objectively serious medical need that went untreated. As such, Moore cannot prevail on his claim and summary judgment in favor of Officer Gilpin is appropriate.

## III. Due Process

Moore claims that Sgt. Thomas hindered the ARP process in violation of his due process rights. The procedural protections of the Due Process Clause only apply to actions that implicate a protected liberty interest, such as those that result in the loss of good time credits or otherwise lengthen the amount of time an inmate must serve, and in actions that unexpectedly exceed the scope of a criminal sentence, such as transfer to a mental institution or involuntary administration of medication. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "[T]here is no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citation omitted); *see also Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).

In any event, Moore did submit an ARP related to the April 6, 2018, incident with Officer Gilpin and subsequently received a determination. Therefore, to the extent Moore claims that he was denied access to the courts because Sgt. Thomas did not process his initial ARP, his claim fails. A critical requirement of an access-to-courts claim is that a prisoner must show "actual injury" to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was frustrated or impeded because of the denial of access to the courts. *Lewis*, 518 U.S. at 352-53 & n.3. The complaint must contain a sufficient

12

description of the predicate claim to permit an assessment of whether it is "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Here, Moore never identified any "nonfrivolous" or "arguable" claim that was frustrated, or that any actual injury resulted from the loss of such a claim. Therefore, he has not established the "actual injury" requirement.

To the extent that Moore's general claim asserts that Sgt. Thomas violated policies and procedures regarding the processing of ARPs, bald allegations of violations of state law or regulations do not provide a basis for a procedural due process claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 392 (4th Cir. 1990). The adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987); *accord Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016). Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *accord Kitchen*, 116 F. Supp. 3d at 629 n.6.

Accordingly, summary judgment is granted in favor of Sgt. Thomas.[5]

## Conclusion

Defendant Officer John Doe shall be dismissed. As to Officer Gilpin and Sgt. Thomas, the Court determines that no genuine issue as to any material fact is presented and they are entitled to a judgment as a matter of law. A separate Order follows.

---

[5] In light of the Court's rulings, an analysis of Defendants' qualified immunity argument is not necessary.

Dated this 19 day of August, 2019.

FOR THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge